■ In the Matter of HERKIMER PULP & PACKAGING CORPORATION, Respondent, v. J. BURCH McMORRAN, as Superintendent of Public Works of the State of New York, Appellant.— MEMORANDUM BY THE COURT. We are in accord with the rationale and the conclusions expressed in the lucid and comprehensive opinion of Mr Justice FOSTER at Special Term. (45 Misc 2d 127.) The judgment may be sustained on the additional ground that section 948 of the Conservation Law, which is the purported authority for the Superintendent's order, must be construed to relate only to impounding structures in "natural" streams and "natural" watercourses; that none of the structures in petitioner's canal-complex are so located, except the diversion dam in West Canada Creek, which impounds but a "trifling" amount of water, as Special Term found; is not directly affected by the order; does not appear to be unsafe; and, as a factor, must consequently be treated as *de minimis.* Judgment affirmed, with costs to respondent. Gibson, P. J., Reynolds, Taylor and Aulisi, JJ., concur; Herlihy, J., concurs in the result, in the following memorandum: I am convinced, following a reading of chapter 165 of the Laws of 1833, which incorporated the Herkimer Manufacturing and Hydraulic Company and authorized the building of the canal, that the canal is a "water course" within the meaning of subdivision (1) of section 948 of the Conservation Law. If the Legislature had intended to regulate only natural water courses, it would not have referred to both a "natural stream" and a "water course", since the latter term would then be superfluous. It is also illogical to assume that the Legislature would enact such extensive controls over "structures located in the waters of the state" without including a waterway which, in effect, was the State's own creation. However, whatever the powers of the State may be when a structure, in and of itself, creates a danger of flooding, the authority of the Superintendent under section 948 is limited when, as in this case, the danger to public safety results solely from a Federal flood control program. Federal-State co-operation in flood control is governed expressly by chapter 862 of the Laws of 1936 (as amd.). Even if the broad language of section 5 of that chapter is read to permit the Superintendent to exercise his section 948 powers, and this is by no means clear, it is evident from a reading of the chapter as a whole that any such regulation must be in conjunction with an appropriation of land. The court found the Superintendent's order to have been tantamount to an appropriation of property. It was, however, in intent as well as execution, a mere assertion of the police power

without any attempt to comply with the appropriation provisions of section 7 of chapter 862 of the Laws of 1936 (as amd.). The situation demanded, in addition to an exercise of the police power, a formal taking with payment for rights appropriated.